1 | Mike Panser
Neugonzenbach 8
9601 Lutisburg-Station
2 | Switzerland
Mailing Address for Service
3 | PO Box 26476, Tamarac, FL 33320

FILED BY _____ D.C.

MAY 0 5 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

4 | **UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF FLORIDA**

5 |

6 | Mike Panser

a German Citizen, an Individual

7 | Plaintiff,

v.

8 | Timothy Antonition,

9 | an individual as CEO of Space Coast

Credit Union

10 | and

Space Coast Credit Union

11 | a Florida Corporation

12 | and,

13 | North American Bancard, LLC,  a parent company
for Electronic Processing Exchange (EPX)

14 | A Michigan Corporation

Defendants,

15 |

16 |

17 |

**COMPLAINT FOR**

1. BREACH OF CONTRACT
2. BREACH OF FIDUCIARY DUTY
3. UNLAWFUL AND DECEPTIVE PRACTICES
4. NEGLIGENT SUPERVISION
5. FALSE ADVERTISING UNDER THE LANHAM ACT
6. UNJUST ENRICHMENT

**COMPLAINT**

18 | I, Mike Panser, a German Citizen and Florida resident, ("Plaintiff,") do hereby

19 | file this Statement of Claim against Timothy Antonitian as the President and CEO of

1

Space Coast Credit Union ("SCCU"), SCCU, a Florida Corporation andNorth American Bancard Holdings, LLC, parent Company to Electronic Payment Exchange (EPX) (collectively the "Defendant") and hereby state as follows:

## 1. PROCEDURAL HISTORY

This case was initiated on December 26, 2019 by Plaintiff as a state matter (Case No. CACE19026460 ).  Judge Carlos A Rodriguez  ordered a case management conference on the matter which went unresolved. A second case management conference was Ordered and the judge ordered a dismissal without prejudice on the grounds of  lack of service on the Defendant NAB within 120 days as proscribed under Florida law.

## II. THE PARTIES

### The Plaintiff, Mike Panser

Plaintiff Mike Panser is a South Florida resident and operates a small freight forwarding business (Now Move USA}, with a registered address of PO Box 26476 Tamarac, FL 33320.

### The Defendant, Timothy Antonition

The Defendant, Timothy Antonitian is the President and CEO of SCCU.

As President and CEO of SCCU, Defendant, Timothy Antonition has both oversight and decision making authority over SCCU's employees including Managers and other subordinate staff. Defendant, Timothy Antonitian also is Executive Vice President of Retail Operations at SCCU

### The Defendant, Space Coast Credit Union ("SCCU")

Space Coast Credit Union ("SCCU") is an NCUA-insured credit union headquartered at 8045 N Wickham Road Melbourne, FL 32940-7920

SCCU began operations in 1951 and as of December 31, 2017, the **credit union** had assets of $4.03 billion serving  more than 400,000 members.

SCCU holds itself as being the third largest credit union in Florida, serving 29 counties, with 59 branch locations that span Florida's east coast.

**The Defendant North American Bancard Holdings, LLC**

The Defendant North American Bancard Holdings, LLC (NAB), is a payments technology company founded on 1992 which Corporate Office is located at 1201 N Market Street, Suite 701 Wilmington, DE 19801 and is headquartered at 250 Stephenson Hwy, Troy, MI 48083

NAB offers solutions for credit, debit, EBT, check conversion and guarantee, e-commerce, gift & loyalty cards, and more.

In 2014, Defendant NAB became a true, end-to-end payment acceptance solution after acquiring payment processor Electronic Payment Exchange (EPX), which is a subsidiary Company to Defendant NAB.

**Electronic Processing Exchange (EPX)**

EPX, is not named as a Defendant in this case but may be a necessary and interested party in this case.

EPX is a subsidiary to the Defendant NAB, international merchant account provider that serves a wide range of business types.

EPX is headquartered at 1201 N. Market Street, Suite 701, Wilmington, Delaware 19801

EPX is branded as "a North American Bancard Company." This means that EPX is a processing platform owned by North American Bancard, and that North American Bancard representatives board their merchants to the EPX platform.

### III. JURISDICTION AND VENUE

Jurisdiction and Venue are proper in this case because Plaintiff resides in Broward County Florida and the cause of action occurred in the State of Florida.

### IV. STATEMENT OF FACTS

1

Plaintiff is a registered account with the Defendant SCCU ( SCCU Member ID (746541).

2

Plaintiff entered into an agreement with the Defendant, North American Bancard (hereinafter "NAB") which Company used EPX to run Plaintiff's customer credit card to process automatic withdrawals from Plaintiff's account with the Defendant SCCU.

3

4

On June 20 2019 Plaintiff sent a request to NAB via facsimile, to withdraw the ACH authorization for any future ACH withdrawals from Plaintiff's SCCU account from the date of the request and onward (a copy is hereto attached as an Exhibit Despite the Plaintiff's action in withdrawing the ACH authorization form, NAB, EPX continued to withdraw money from Plaintiff's account.

5

6

7

On August 21 2019,  Plaintiff filed an ACH return with the its financial institution, the Defendant SCCU for unauthorized EPX  transactions occurring on: 08/20 – 08/19 – 08/15 – 08/14 – 08/09 -08/04 – 08/07 – 08/05, (hereto attached as an Exhibit )

8

9

10

On August 22, 2019 Plaintiff filed an ACH return with the Defendant SCCU for unauthorized  EPX transactions occurring on 08/02 – 08/01 – 07/29 (hereto attached as an Exhibit )

11

12

On August 23, 2019 Plaintiff filed an ACH return with the Defendant SCCU for unauthorized EPX transaction on 07/05 – 07/03 – 07/02 – 07/01- 06/26   (hereto attached as an Exhibit )

13

14

Managers acting for and on behalf of SCCU  made several assurances to Plaintiff over the phone that they would have reversed the unauthorized withdrawals but have failed to do so; furthermore, the Defendant SCCU have failed to return Plaintiff's many calls in an attempt to resolve the issue.

15

16

17

When Plaintiff finally was able to gain a phone conversation on the issue, the Manager for SCCU, informed Plaintiff that he was too late in submitting the ACH

18

19

1

return requests and that SCCU had no intentions of honoring the assurances made to

2

him by SCCU.

Plaintiff explained to the SCCU Manager that there was in fact no time frame

3

involved for requesting the ACH returns as Plaintiff had withdrawn his ACH

4

authorization from NAB and as such EPX had no grounds to continue to withdraw

money from Plaintiffs account, and further the Defendant SCCU had absolutely no

5

authority whatsoever to allow EPX to withdraw said funds in dispute.

Plaintiff asserts that only NAB had the authorization to withdraw funds which

6

authorization Plaintiff had cancelled pursuant to the June 20th 2019 correspondence

7

Plaintiff had sent to NAB.

In Defendant SCCU's  attempt to address Plaintiff's concerns, the Manager sent

8

Plaintiff a copy of a contract endorsed by North American Bancard, which does not

9

include EPX in any of its provisions.

Furthermore, in an attempt to resolve the issue, the Defendant SCCU contacted

10

NAB without informing Plaintiff and disclosed Plaintiff's personal information, albeit

11

without Plaintiff's informed consent

Defendant SCCU returned $155 to Plaintiff representing the refund for the

12

unauthorized withdrawal that occurred on 8/20/2019, however the remaining

13

unauthorized transactions to be returned to Plaintiff's account remain outstanding.

Plaintiff sent a correspondence to the Defendant Timothy Antonition seeking a

14

resolution to the matter, to no avail.

15

Plaintiff has attempted to resolve the matter with both the Defendant SCCU and

16

the Defendant NAB with no success.

Further to the above, Defendant SCCU's continues to generate periodic

17

accounting statements for Plaintiff stating that Plaintiff has no issues with his account

18

when in fact, Plaintiff's account is missing in excess of $25,000USD,

19

Plaintiff states that because the Defendant SCCU's malfeasance for allowing the Defandant NAB to withdraw funds from Plaintiff's account in excess of $25,000USD, without Plaintiff's consent, Plaintiff has suffered severe economic and financial losses.

At present Plaintiff has been unable to effectively continue transacting business and is in the brink of losing his place of residence overseas.

Plaintiff has been struggling to pay his bills because of the Defendants' conduct and has further had negative items listed by NAB on Plaintiff's credit rating, which has significantly lowered Plaintiff's credit score to the point that Plaintiff is unable to transact business.

Plaintiff therefore brings this action against the Defendants alleging four (4) causes of action:

**FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(As Against Defendant SCCU)**

In the State of Florida, Credit Unions are governed by **Chap. 657** of the Florida **Statutes.**

A credit union is a cooperative, nonprofit association, organized under this chapter, for the purposes of encouraging thrift among its members, creating sources of credit at fair and reasonable rates of interest, and providing an opportunity for its members to use and control their resources on a democratic basis in order to improve their economic and social condition. **657.003 Purposes.**

**657.0265   Liability of credit union directors, supervisory committee members, or audit committee members.—**

(1)   A director of a credit union organized under state or federal law, or a member of the supervisory or audit committee of such credit union, is not personally liable for monetary damages to the credit union, its members, or any other persons for any

6

statement, vote, decision, or failure to act, regarding the management or policy of the credit union, unless:

(a)   The director or the member of the supervisory or audit committee breached or failed to perform her or his duties as a director or as a member of the supervisory or audit committee; and

(b)   The breach or failure to perform by the director or the member of the supervisory or audit committee constitutes:

3.   Recklessness or an act or omission which was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

(2)   For the purposes of this section, the term "recklessness" means the acting, or omission to act, in conscious disregard of a risk that is:

(a)   Known, or so obvious that it should have been known, to the director or member of the supervisory or audit committee; and

(b)   So great as to make it highly probable that harm would follow from such action or omission.

Because determining when a fiduciary duty exists is often a fact-intensive inquiry, conclusory allegations that one party placed "trust and confidence" in another are typically insufficient to plead a fiduciary relationship. For example, in *Raymond, James & Associates, Inc. v. Zumstorchen Investment, Ltd.*, 488 So. 2d 843, 846 (Fla. 2d DCA 1986), the Second District Court of Appeal affirmed a trial court's dismissal of a breach of fiduciary duty claim because the plaintiff failed to allege any ultimate facts indicating that a fiduciary relationship existed.   A contractual relationship between the parties was not required to form a fiduciary relationship. *Masztal v. The City of Miami*, 971 So. 2d 803, 808 (Fla. 3d DCA 2008); in this case, a putative class

action plaintiffs and their attorneys were held to owe an implied fiduciary duty to potential members of a class of property owners prior to certification of a class. The named plaintiffs brought a class action against the City of Miami, challenging a special assessment to fund fire rescue services and seeking a refund to all who had paid the assessment. The court stated that a bank and its customers generally deal at arm's length, but that a fiduciary relationship may arise under special circumstances where "the bank knows or has reason to know that the customer is placing trust and confidence in the bank and is relying on the bank so to counsel and inform him." *Id.* at 40-41, *quoting Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 208 (Fla. 3d D.C.A. 2003). Those special circumstances, according to the court, include instances where the lender "takes on extra services for a customer, receives any greater economic benefit than from a typical transaction, or exercises extensive control." *Id.* Subsequently, that person must (expressly or impliedly) agree to serve the interests of the first party. see*Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.,* 850 So. 2d 536 (Fla. 5th DCA 2003), Both legal and equitable remedies are available for a breach of fiduciary duty. The equitable remedies include an accounting, imposition of a constructive trust, disgorgement of profits or commissions, and injunctive relief. *See Williams v. Stanford,* 977 So. 2d 722, 730 (Fla. 1st D.C.A. 2008) ("A constructive trust is an equitable remedy available in cases dealing with breaches of fiduciary duty; such an instrument restores property to its rightful owner and prevents unjust enrichment"); *Cassedy v. Alland Investments Corp.*, 982 So. 2d 719, 720 (Fla. 1st D.C.A. 2008) (dissolved corporation and its representatives had fiduciary relationship with investor such that they were required to render final accounting); *Heina v La Chucua Paso Fino Horse Farm, Inc.*, 752 So. 2d 630, 636 (Fla. 5th D.C.A. 1999) (corporate president's wrongful appropriation of corporation's assets warranted an accounting and constructive trust); *c.f. Young v. Field*, 548 So. 2d 784, 786 (Fla. 4th D.C.A. 1989) (broker who breaches fiduciary duty forfeits his commission and has to

account for any profits); *Vargas v. Vargas*, 771 So. 2d 594, 595-96 (Fla. 3d D.C.A. 2000) (temporary injunction was warranted in sisters' action against brothers for breach of fiduciary duty and conversion in order to freeze various safe deposit boxes containing bearer shares to offshore companies and $4.4 million in bank accounts).

Legal remedies for breach of fidiciary duty include tort actions for both compensatory and punitive damages. *See First National Bank,* 789 So. 2d at 412-16 (affirming award of compensatory damages for breach of fiduciary duty claim); *Mortellite v. American Tower, L.P.,* 819 So. 2d 928, 934 (Fla. 2d D.C.A. 2002) (minority shareholder was entitled to punitive damages for majority shareholder's breach of fiduciary duty, irrespective of any compensatory damages). These equitable and legal remedies mentioned above may result in damages greater than traditional breach of contract damages. The standard damages remedy for breach of contract is either the recovery of lost profits or recovery of expenditures. *See, e.g., Beefy Trail, Inc. v. Beefy King International, Inc.,* 267 So. 2d 853, 856 (Fla. 4th D.C.A. 1972).

## SECOND CAUSE OF ACTION
## UNLAWFUL ACTS AND PRACTICE
### As Against Defendant SCCU

Plaintiff re-alleges and incorporates by this reference all of the allegations of the proceeding paragraphs as though fully set forth herein.

As for the third cause of action, Plaintiff states that Defendant SCCU is liable to Plaintiff for predicating unlawful acts and practices when it violated ACH Procedures applicable to banks and credit unions such as the Defendant SCCU. The ACH network electronically exchanges funds and related information among individuals, businesses, financial institutions, and government entities. Payment instructions originated through the ACH network are either to credit or to debit a deposit account. The ACH operator provides a central distribution and settlement

point for transmitting funds electronically between an originating depository financial institution (ODFI) and a receiving depository financial institution (RDFI.) ACH operator. In the U.S, there are two ACH Operators that receive batches of ACH entries from the ODFI (central clearing facilities): The Federal Reserve and The Clearing House.)

**501.204   Unlawful acts and practices.**—

(1)   Unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(2)   It is the intent of the Legislature that, in construing subsection (1), due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to s. 5(a)(1) of the Federal Trade Commission Act, 15 U.S.C. s. 45(a)(1) as of July 1, 2017.

**Civil penalty.**--Except as provided in s. 501.2077, any person, firm, corporation, association, or entity, or any agent or employee of the foregoing, who is willfully using, or has willfully used, a method, act, or practice declared unlawful under s. 501.204, or who is willfully violating any of the rules of the department adopted under this part, is liable for a civil penalty of not more than $10,000 for each such violation. Willful violations occur when the person knew or should have known that his or her conduct was unfair or deceptive or prohibited by rule. This civil penalty may be recovered in any action brought under this part by the enforcing authority; or the enforcing authority may terminate any investigation or action upon agreement by the person, firm, corporation, association, or entity, or the agent or employee of the foregoing, to pay a stipulated civil penalty. The department or the court may waive any such civil penalty if the person, firm, corporation, association, or entity, or the agent or employee of the foregoing, has previously made full restitution or

reimbursement or has paid actual damages to the consumers or governmental entities who have been injured by the unlawful act or practice or rule violation. If civil penalties are assessed in any litigation, the enforcing authority is entitled to reasonable attorney's fees and costs. A civil penalty so collected shall accrue to the state and shall be deposited as received into the General Revenue Fund unallocated.

The facts are undisputed that that the Defendant SCCU failed to follow ACH Procedures when it allowed EPX to continuously withdraw funds from Plaintiff's account, despite Plaintiff sending a request to NAB via facsimile on June 20, 2019, to withdraw the ACH authorization for any future ACH withdrawals from Plaintiff's SCCU account from the date of the request and onward (a copy is hereto attached as Exhibit A). Plaintiff informed the managers of the Defendant SCCU that it violated ACH Procedures in the manner described however; the Defendant SCCU's managers even  admitted to violating ACH Procedures, to *wit*:

1. **Unauthorized debits can be disputed beyond the return time frame.** ACH rules state that unauthorized debits to corporate accounts must be returned by midnight of the second banking day following the effective date of the original entry. However, an ODFI warrants that all ACH transactions it originates are authorized. If someone sends an ACH debit you have not authorized to your business or corporate account, the ODFI has breached its warranty, and you can dispute the transaction even after the return deadline has passed. But sooner is always better.

https://www.nacha.org/resources/ach-network-volume-and-value-2017

In light of the above, Plaintiff requests that the Court award Plaintiff the statutory damages associated with Defendant SCCU's unlawful acts and practices in

breaching ACH Procedures and allowing EPX, a third party to continuously withdraw funds from Plaintiff's account.

**THIRD CAUSE OF ACTION**

**TORTIOUS INTERFERENCE WITH A**

**CONTRACTUAL OR BUSINESS RELATIONSHIP**

**As Against Defendants SCCU and NAB**

Plaintiff re-alleges and incorporates by this reference all of the allegations of the proceeding paragraphs as though fully set forth herein.

As for the third cause of action, Plaintiff states that Defendants SCCU and NAB are liable to Plaintiff for Tortous Interference with a Contractual or Business Relationship. A claim for tortious interference with a contractual or business relationship consists of four elements: 1) the existence of a business relationship between the plaintiff and a third person, not necessarily evidenced by an enforceable contract, under which the plaintiff has legal rights,2) the defendant's knowledge of the relationship, 3) an intentional and unjustified interference with the relationship by the defendant which induces or otherwise causes the third person not to perform, and 4) damage to the plaintiff resulting from the third person's failure to perform. See Seminole Tribe of Florida v. Times Pub. Co., Inc., 780 So. 2d 310, 315 (Fla. 4th DCA 2001).

Plaintiff asserts that it is heavily engaged in shipping goods for customers to destinations all over the world. Plaintiff has been utilizing the services of Defendant SCCU, for the purpose of serving as a payment processor for Plaintiff's customers as third parties to the agreement between Plaintiff and Defendant SCCU. Defendant SCCU, knew or should have known of Plaintiff's business activities as a freight shipping Company, through the information which Plaintiff provided to Defendant on the merchant application form and agreement between the Parties. Defendant SCCU created an intentional and unjustified interference with the Plaintiff's

relationship with its customers by closing Plaintiff's account suddenly and without notice and allowing EPX to continuously withdraw funds from Plaintiff's account without failing to investigate and/or rectify the matter, causing Plaintiff's business to be affected and causing other third party customers not to contract with Plaintiff's Company.

Because of Defendant's tortous interference with the contractual and business relationship with Plaintiff's customers, Plaintiff seeks damages in the amount of $20.000USD

## FOURTH CAUSE OF ACTION
## NEGLIGENT SUPERVISION
### As Against Defendant Timothy Antonition

As Against the Defendant Timothy Antonition

Plaintiff states that Florida jurisprudence allows for the Plaintiff to assert the tort of Negligent Supervision which Plaintiff asserts against the Defendant Timothy Antonition, as follows:

1. The defendant employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness;

2. The defendant employer owes a duty to plaintiff to protect the plaintiff from a particular injury or damage;

3. The defendant employer breaches its duty by failing to take further action, such as investigation, discharge, or reassignment;

4. Defendant's breach was the proximate cause of injury or damage to plaintiff; and

5. Plaintiff suffered damages as a result of the breach

1.   Plaintiff states that Defendant Timothy Antonition  became aware or should have become aware of the problems which employee and SCCU Manager Kim had created by her decision to disclosure Plaintiff's confidential information concerning his account and making a deal with the Defendant NAB concerning the disbursement of the amount of $25,000, all without Plaintiff's knowledge and or consent, and well after Plaintiff had sent a request to NAB via facsimile, to withdraw the ACH authorization for any future ACH withdrawals from Plaintiff's SCCU account from the date of the request and onward.

2.   Plaintiff states that the that Plaintiff has an account with the Defendant SCCU and expected a level of confidentiality with the Defendant SCCU. Plaintiff states that by extension, he entrusted the Defendant Timothy Antonition to hire and supervise employees and their conduct concerning customer accounts either directly or through some chain of command or delegated authority. This duty of confidentiality entrusted by the Plaintiff of the Defendant SCCU and its CEO the Defendant Timothy Antonition to supervise its Managers also included for Manangers and staff not to breach this confidentiality through disclosure of client account information to third parties outside the contract with Plaintiff and the Defendant SCCU and its CEO Defendant Timothy Antonition to supervise, albeit without Plaintiff's consent.

Plaintiff states that the duty of confidentiality owed to him by Defendant SCCU, and by extension the Defendant Timothy Antonition to supervise its Managers was breached when SCCU Manager Kim concerning her unauthorized conversations with the Defendant NAB concerning the matter and through Defendant Timothy Antonition's failing to take further action, such as investigation, discharge, or reassignment of said Manager.

3. Plaintiff asserts that Defendant Timothy Antonition's breach in failing to both supervise and rectify the matter after its occurrence was a proximate cause of Plaintiff's losses in excess of $25,000.

4. Plaintiff has suffered actual damages as a result of Defendant's breach.

## FIFTH CAUSES OF ACTION

### 1. Violation under the Lanham Act 41 U.S.C. § 1125

**As Against Defendant North American Bancard LLC also referred as North American Bancard Holdings LLC**

The false-advertising section of the Lanham Act (commonly known as Section 43(a)) provides as follows:

Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

1. is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

2. in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**41 U.S.C. § 1125(a)(1).**

**The Lanham Act Elements**

To prevail on a false-advertising claim under the Lanham Act, a plaintiff must satisfy the following elements: (1) a false or misleading statement of fact; that is (2) used in a commercial advertisement or promotion; that (3) deceives or is likely to deceive in a material way; (4) in interstate commerce; and (5) has caused or is likely to cause competitive or commercial injury to the plaintiff.

**(I)       False or Misleading Statement of Fact**

As for the first element,

Two types of advertising claims are actionable under the Lanham Act: (1) statements that are literally false; and (2) statements that are literally true, but likely to mislead, confuse, or deceive.

Specific claims of false objective facts are, of course, the easiest to prove. Statements of opinion or general claims of superiority—often called puffery—are not typically actionable under the Lanham Act. But a plaintiff might recover on a superiority claim if, for example, the challenged advertisement makes a direct comparison to a competitor's product.

A plaintiff can recover under the Lanham Act for misleading statements that are literally true, but must show that the advertisement has deceived or has a tendency to deceive.

Plaintiff states that the Defendant's holding itself out as North American Bancard Holdings LLC on the World Wide Web when it outright refuses to receive service of process either in Delaware (its registered office) or in Troy, Michigan (its  Headquarters) on the basis that the Company is "North American Bancard" and not

North American Bancard Holdings LLC, concerns both a False and Misleading Statement of Fact and  constitutes  statements that are "literally

16

false." Plaintiff states that if North American Bancard Holdings LLC cannot be served as North American Bancard Holdings LLC then it should not advertise itself as such as it confuses both the Public and deceives the potential Plaintiff, process server and ultimately the tax payer.

### (ii) Commercial Advertising or Promotion

As for the second element, the definition of commercial advertising or promotion under the Lanham Act is relatively broad and, in addition to obvious advertisements, can include internet advertising, labels, and even some sales presentations to groups of customers or potential customers. This element is typically a factually specific inquiry.

Plaintiff states that the name North American Bancard Holdings LLC is marketed, advertised and promoted throughout the continental United States on the World Wide Web.

### (iii) Deceives or is Likely to Deceive in a Material Way

As for the third element, Plaintiff states that Defendant's false advertising deceived Plaintiff in a material way as Plaintiff was unable to serve the Defendant North American Bancard both in Delaware and Michigan on related case No (CACE19026460) because Plaintiff had named North American Bancard Holdings on the face of the Complaint as a Defendant and when the retained process server for the Complaint endeavored to serve the Defendant North American Bancard as the name advertised on the web North American Bancard Holdings, the company's agents avoided or otherwise evaded service of Process by claiming that their company was not North American Bancard Holdings as was listed on the Complaint and which is advertised on the World Wide Web. Plaintiff states that because of this false and misleading advertising predicted by the Defendant NAB that Plaintiff was unable to provide proof of service to the Court within the 120 day limit

as proscribed by the Florida Rules of service and subsequently Plaintiff's State Action was dismissed without prejudice at the State level. Plaintiff asserts this federal action and this cause of action for false advertising against the Defendant NAB for this basis as their delay tactics through false statements on the web caused a significant delay in rectifying this case at the state level.

## VI. PRAYER FOR RELIEF AND PLEA FOR DAMAGES

WHEREFORE I, Mike Panser, do hereby file this Complaint against Defendant Timothy Antonition, an individual and Defendants Space Coast Credit Union, and North American Bancard Holdings LLC and EPX, asserting four causes of action, and further asks the Court to:

1. Enter Judgment in favor of the Plaintiff in the amount of 25,000USD representing the amount which Defendant SCCU allowed to be withdrawn by the Defendant NAB, without Plaintiff's consent.

2. Award Plaintiff damages for Breach of Fiduciary Duty in the amount of $25.000USD representing damages caused by the Defendant SCCU in communicating with the Defendant NAB without the Plaintiff's consent as customer of the Defendant SCCU.

3. Award Plaintiff the statutory damages for the unlawful acts and practices predicated by Defendant.

4. Award Plaintiff the damages for the tortious interference of contractual or business relationship predicated by Defendant SCCU, as Plaintiff's continuing business operations has been adversely affected to the tune of $100,000USD

5. Order that the Defendant Timothy Antonition, CEO of SCCU be held personally liable for the acts of the managers of SCCU which have

significantly delayed the resolution of this matter and that damages be ordered against him for $50,000

6.  Award Plaintiff litigation expenses, court costs and any other costs which this Court deems proper and will allow, given the facts of this case.

7. Order NAB to remove the wrongfully stated negative item from Plaintiff's credit.

8. In light of the foregoing, Plaintiff requests the Court to award Plaintiff $200,000USD as the total amount of damages.

9.  Plaintiff further hereby requests a jury trial in the adjudication of this matter.

Respectfully Submitted,

Mike Panser

Plaintiff, Pro Se

Dated May 1, 2023

## CERTIFICATE OF SERVICE

I Mike Panser certify that I have on this the ___1___ day of May 2023 served the Defendants below  a copy of this Complaint via registered mail to the following addresses:

Timothy Antonition

 8045 N Wickham Road

 Melbourne, FL 32940-7920

1   Space Coast Credit Union ("SCCU")

2    8045 N Wickham Road
     Melbourne, FL 32940-7920

3

4

5    North American Bancard Holdings, LLC (NAB),
     1201 N Market Street, Suite 701

6    Wilmington, DE 19801

7

8

9

10                                                       Mike Panser

11                                                    Plaintiff, Pro Se
                                           PO Box 26476, Tamarac, FL 33320.

12

13

14

15

16

17

18

19

FROM:

MIKE PANSER
PO BOX 26476
TAMARAC FL
            33320

TO:

US DISTRICT
SOUTHERN DISTR
299 E BROW
BLVD STE 10
FT LAUDERDALE
            3330

**UNITED STATES**
**POSTAL SERVICE.**

*Retail*

**F**

**US POSTAGE PAID**

**$5.40**

Origin: 33319
05/04/23
1130510291-14

**FIRST-CLASS PKG SVC - RTL™**

0 Lb 5.70 Oz

**RDC 06**

C019

SHIP
TO:

299 E BROWARD BLVD
FORT LAUDERDALE FL 33301-1944

**USPS TRACKING® #**

9500 1156 2117 3124 8207 34